UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-cv-60394-GAYLES

**ABERCROMBIE & FITCH TRADING CO.,**
          **Plaintiff,**

      v.

**ABERCROMBIEANDFITCHSALE.US et al.,**
          **Defendants.**
_____/

**TEMPORARY RESTRAINING ORDER
AND ORDER SETTING HEARING ON MOTION FOR PRELIMINARY INJUNCTION**

**THIS CAUSE** comes before the Court on Plaintiff Abercrombie & Fitch Trading Co.'s *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction [ECF No. 6], against Defendants, the Individuals, Partnerships and Unincorporated Associations identified on Schedule "A" hereto, pursuant to 15 U.S.C. § 1116, Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C. §1651(a), for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) & (d). Because the Court finds that the Plaintiff has satisfied the requirements for the issuance of a temporary restraining order, the Plaintiff's Application for Temporary Restraining Order shall be granted.

**I.    FACTUAL BACKGROUND[1]**

    1.    Plaintiff Abercrombie & Fitch Trading Co., is the registered owner of the following trademarks which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Abercrombie Marks"):

---

[1] The factual background is taken from Plaintiff's Complaint [ECF No. 1], Plaintiff's Application for Temporary Restraining Order, and supporting evidentiary submissions.

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| ABERCROMBIE & FITCH | 0,951,410 | JANUARY 23, 1973 | IC 025 - men's and women's clothing and footwear-namely pants, shirts, skirts, jackets, coats, gloves, mittens, hats, underwear, shoes, belts, caps. |
| abercrombie | 2,305,464 | JANUARY 4, 2000 | IC 025 - Clothing, namely, coats, jackets, knit shirts, woven shirts, t-shirts, shirts, underwear, pants, jeans, hats and shoes.<br><br>IC 035 - Retail clothing store services |
| ABERCROMBIE & FITCH | 2,500,146 | OCTOBER 23, 2001 | IC 003 - personal care products, namely, perfume.<br><br>IC 014 - jewelry, namely, necklaces and bracelets.<br><br>IC 018 - handbags, tote bags and travel bags.<br><br>IC 025 - clothing, namely, t-shirts, sweatshirts, sweatpants, jeans, sandals, visors, tank tops, swimwear, bikinis and camisoles. |
| A & F | 2,530,664 | JANUARY 15, 2002 | IC 025 - clothing, namely, hats, caps, shirts, t-shirts, tank tops, knit tops, woven tops, halter tops, sweatshirts, sweatpants, underwear, boxer shorts, pants, short pants, jeans, skirts, foot-wear, sweaters, vests, coats, jackets, scarves.<br><br>IC 035 - retail personal care product and clothing store services and mail order catalog services featuring personal care products and clothing. |

2

| | | | |
|---|---|---|---|
| HOLLISTER | 2,774,426 | OCTOBER 21, 2003 | IC 025 - clothing, namely, shirts, t-shirts, tank-tops, knit tops, woven tops, sweat-shirts, sweatpants, jogging pants, swim-wear, boxer shorts, pants, short pants, jeans, dresses, skirts, belts, sweaters, vests, coats, jackets, sold exclusively in applicant's stores. IC 035 - retail store services featuring clothing and personal care products provided exclusively in applicant's stores. |
| (moose design) | 3,212,644 | February 27, 2007 | IC 025 - clothing, namely, polo shirts, sweaters, t-shirts, shirts, knit tops, woven tops, sweatshirts, sweatpants, pants, shorts, caps, hats, scarves, jackets, coats, sandals, flip flops, belts, tank tops, underwear, boxer shorts, swim suits, pajamas, sleepwear. IC 035 - retail store services, and on-line retail store services featuring clothing, footwear, fashion accessories, fragrances and jewelry. |
| FITCH | 3,304,999 | October 2, 2007 | IC 025 – clothing, namely, athletic wear, beachwear, caps, footwear, hats, knit shirts, knit tops, pants, shirts, shorts, sleepwear, sweat pants, sweat shirts, sweat shorts, sweaters, t-shirts. |
| HOLLISTER | 3,310,650 | OCTOBER 16, 2007 | IC 025 - belts; blouses; boxer shorts; camisoles; caps; coats; footwear; halter tops; hats; jackets; jeans; knit shirts; loungewear; pants; sandals; scarves; shirts; shoes; shorts; skirts; sweat pants; sweat shirts; sweat shorts; sweaters; swim wear; t-shirts; tank tops; under-pants; undershirts; underwear. |
| ABERCROMBIE | 3,484,799 | AUGUST 12, 2008 | IC 025 - coats; jackets; knit shirts; shirts; t-shirts; underwear; pants; jeans; hats; shoes. |

| | | | |
|---|---|---|---|
| HCO | 3,529,071 | NOVEMBER 4, 2008 | IC 025 - clothing, namely, boxer shorts, caps, coats, hats, jackets, knit shirts, knit tops, loungewear, pants, shirts, slacks, sweat pants, sweat shirts, t-shirts and underwear.<br><br>IC 035 - retail store services and on-line retail services featuring clothing. |
| (seagull logo) | 3,745,497 | February 2, 2010 | IC 025 – clothing, namely, blouses, boxer shorts, camisoles, caps, coats, dresses, footwear, hats, jackets, jeans, knit shirts, knit tops, loungewear, pajamas, pants, scarves, shirts, shorts, skirts, sleepwear, sweat pants, sweat shirts, sweaters, swim wear, t-shirts, tank tops, undershirts, underwear and vests, all sold exclusively through applicant's Hollister stores and Hollister website. |

*See* Declaration of Seth Wood in Support of Application for Temporary Restraining Order ("Wood Decl.") ¶ 4. The Abercrombie Marks are used in connection with the manufacture and distribution of goods in the categories identified above. *Id*.

2.      Defendants, through the fully interactive commercial Internet websites and supporting domain names operating under their individual, partnership and/or business association names identified on Schedule "A" hereto (the "Subject Domain Names"), have advertised, promoted, offered for sale, or sold goods bearing what Plaintiff has determined to be counterfeits, infringements, reproductions, and/or colorable imitations of Plaintiff's trademarks. *See* Wood Decl. ¶¶ 9-12; Declaration of Virgilio Gigante in Support of Application for Temporary Restraining Order ("Gigante Decl.") ¶ 2; *see also* Compl. Composite Ex. 2 [ECF Nos. 1-2 through 1-6].

3.      Although each Defendant may not copy and infringe each Abercrombie Mark for each category of goods protected, Plaintiff has submitted sufficient evidence showing each

4

Defendant has infringed, at least, one or more of the trademarks at issue. *See* Wood Decl. ¶¶ 10-12. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, infringements, reproductions, and/or colorable imitations of the Abercrombie Marks. *See id* ¶¶ 9-10, 12.

4. Plaintiff's representative reviewed and visually inspected the web page captures reflecting various products offered for sale bearing the Abercrombie Marks via Defendants' Internet websites operating under the Subject Domain Names and determined the products offered for sale were not genuine versions of Plaintiff's products. *See id.* ¶¶ 10-12.

## II. LEGAL STANDARD

In order to obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F. 3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may issue a temporary restraining order without notice to the adverse party or its attorney only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

**III.   ANALYSIS**

The declarations that the Plaintiff submitted in support of its Application for Temporary Restraining Order support the following conclusions of law:

A.   Plaintiff has a very strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing counterfeits, reproductions, or colorable imitations of the Abercrombie Marks, and that the products Defendants are selling and promoting for sale are copies of Plaintiff's products that bear copies of the Abercrombie Marks.

B.   Because of the infringement of the Abercrombie Marks, Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. It clearly appears from the following specific facts, as set forth in Plaintiff's Complaint, Application for Temporary Restraining Order, and accompanying declarations on file, that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers before Defendants can be heard in opposition unless Plaintiff's request for *ex parte* relief is granted:

1.   Defendants own or control Internet websites, domain names, or website businesses which advertise, promote, offer for sale, or sell goods bearing counterfeit and infringing trademarks in violation of Plaintiff's rights;

2.   There is good cause to believe that more counterfeit and infringing products bearing Plaintiff's trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products and an unnatural erosion of the legitimate marketplace in which it operates;

3.   There is good cause to believe that if Plaintiff proceeds on notice to Defendants on this Application for Temporary Restraining Order, Defendants can easily and

quickly transfer the registrations for many of the Subject Domain Names, or modify registration data and content, change hosts, and redirect consumer traffic to other websites, thereby thwarting Plaintiff's ability to obtain meaningful relief;

C. The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its reputation, and goodwill as a manufacturer and distributor of quality products, if such relief is not issued; and

D. The public interest favors issuance of the temporary restraining order in order to protect Plaintiff's trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiff's genuine goods.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Plaintiff's *Ex Parte* Application for a Temporary Restraining Order [ECF No. 6] is **GRANTED** as follows:

(1) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby temporarily restrained as follows:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Abercrombie Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing the Abercrombie Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the Abercrombie Marks, or any confusingly similar trademarks.

(2) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order

shall immediately discontinue the use of the Abercrombie Marks or any confusingly similar trademarks, on or in connection with all Internet websites, domain names, or businesses owned and operated, or controlled by them, including the Internet websites operating under the Subject Domain Names;

(3) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of the Abercrombie Marks, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to websites registered by, owned, or operated by each Defendant, including the Internet websites operating under the Subject Domain Names;

(4) Each Defendant shall not transfer ownership of the Subject Domain Names during the pendency of this action, or until further Order of the Court;

(5) The domain name Registrars for the Subject Domain Names are directed to transfer to Plaintiff's counsel, for deposit with this Court, domain name certificates for the Subject Domain Names;

(6) Upon Plaintiff's request, the privacy protection service for any of the Subject Domain Names for which the Registrant uses such privacy protection service to conceal the Registrant's identity and contact information is ordered to disclose to Plaintiff the true identities and contact information of those Registrants;

(7) Upon entry of this Order, Plaintiff shall provide a copy of the Order by email to the registrar of record for each of the Subject Domain Names. Upon receipt of the Order, the reg-

8

istrar of record for each of the Subject Domain Names shall immediately lock each of the Subject Domain Names; shall notify each registrant of record of the Order; and shall provide notice of the locking of the domain name to the registrant of record. After providing such notice to the registrars so the domain names may be locked, Plaintiff shall also provide notice and a copy of this Order to the registrant for each Subject Domain Name via email to the email address provided as part of the domain registration data for each of the Subject Domain Names identified in the Application for Temporary Restraining Order. If an email address was not provided as part of the domain registration data for a Subject Domain Name, Plaintiff shall provide notice and a copy of this Order to the operators of the Internet websites via an onsite email address and/or online submission form provided on the Internet websites operating under such Subject Domain Names. Forty-eight hours after emailing this Order to the registrars of record and the registrants, Plaintiff shall provide a copy of this Order to the registrars and the registries for the Subject Domain Names for the purposes described in Paragraph 8, below*;*

(8)     The domain name registrars for the Subject Domain Names shall immediately assist in changing the registrar of record for the Subject Domain Names to a holding account with a registrar of Plaintiff's choosing (the "New Registrar"), excepting any such domain names which such registrars have been notified in writing by Plaintiff have been or will be dismissed from this action, or as to which Plaintiff has withdrawn its request to immediately transfer such domain names. To the extent the registrars do not assist in changing the registrars of record for the domains under their respective control within one business day of receipt of this Order, the top-level domain ("TLD") registries for the Subject Domain Names or their administrators, including backend registry operators or administrators, within five business days of receipt of this Order, shall change, or assist in changing, the registrar of record for the Subject Domain Names to a holding account with the New Registrar, excepting any such domain names which such registries

have been notified in writing by Plaintiff have been or will be dismissed from this action or as to which Plaintiff has withdrawn its request to immediately transfer such domain names. Upon the change of the registrar of record for the Subject Domain Names, the New Registrar will maintain access to the Subject Domain Names in trust for the Court during the pendency of this action. Additionally, the New Registrar shall immediately institute a temporary 302 domain name redirection which will automatically redirect any visitor to the Subject Domain Names to the following Uniform Resource Locator ("URL") http://servingnotice.com/Augk82/index.html whereon copies of the Complaint, this Order, and all other documents on file in this action are displayed. Alternatively, the New Registrar may update the Domain Name System ("DNS") data it maintains for the Subject Domain Names, which link the domain names to the IP addresses where their associated websites are hosted, to NS1.MEDIATEMPLE.NET and NS2.MEDIATEMPLE.NET, which will cause the domain names to resolve to the website where copies of the Complaint, this Order, and all other documents on file in this action are displayed. After the New Registrar has effected this change, the Subject Domain Names shall be placed on lock status, preventing the modification or deletion of the domains by the New Registrar or Defendants;

(9)     This Order shall no longer apply to any Defendant or associated domain name dismissed from this action or to which Plaintiff has withdrawn its request for a temporary restraining order;

(10)    Each Defendant shall preserve copies of all computer files relating to the use of any of the Internet websites under their Subject Domain Names and shall take all steps necessary to retrieve computer files relating to the use of the Subject Domain Names that may have been deleted before the entry of this Order;

(11)    This Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated

to by the parties;

(12)    This Order shall apply to the Subject Domain Names, associated websites, and any other domain names and websites properly brought to the Court's attention and verified by sworn affidavit that such new domain names are being used by Defendants for the purpose of counterfeiting the Abercrombie Marks at issue in this action or unfairly competing with Plaintiff on the World Wide Web;

(13)    Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Fed. R. Civ. P. 65(c), Plaintiff shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint during the pendency of this action, or until further Order of the Court. Plaintiff shall post the bond prior to requesting the registries change to the registrar of record for the Subject Domain Names to a holding account with the New Registrar;

(14)    A **hearing** is set before this Court in the United States Courthouse located at 400 North Miami Avenue, Courtroom 11-1, Miami, Florida, 33128, on **March 14, 2017, at 10:00 a.m.**, at which time Defendants or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiff's requested preliminary injunction;

(15)    Plaintiff shall serve a copy of the Complaint, the Application for Temporary Restraining Order, and this Order on each Defendant by email as described above and by posting a copy of the Complaint, the Application for Temporary Restraining Order, this Order, and all other pleadings and documents on file in this action on the website located at http://servingnotice.com/Augk82/index.html within forty-eight (48) hours of control of the Subject Domain Names being changed to the Court via the New Registrar's holding account, and such

notice so given shall be deemed good and sufficient service thereof.[2] Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to Defendants by regularly updating the website located at http://servingnotice.com/Augk82/index.html or by other means reasonably calculated to give notice which is permitted by the Court;

(16)   **Any response or opposition** to Plaintiff's Motion for Preliminary Injunction must be filed and served on Plaintiff's counsel at least forty-eight (48) hours prior to the hearing and filed with the Court, along with Proof of Service. Plaintiff shall file any **Reply Memorandum** twenty-four (24) hours prior to the hearing. The above dates may be revised upon stipulation by all parties and approval of this Court. **Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d), Fed. R. Civ. P. 65, The All Writs Act, 28 U.S.C. § 1651(a), and this Court's inherent authority.**

(17)   The Clerk is directed to **UNSEAL** all docket entries in this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of March, 2017.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

[2] In this Circuit, Fed. R. Civ. P. 65 has been interpreted to require that a party have notice of the motion and hearing; perfecting service on a defendant is not a prerequisite to the entry of a preliminary injunction order. *See Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 302 (5th Cir. 1978); *Diamond Crystal Brands, Inc. v. Wallace*, 531 F. Supp. 2d 1366, 1370-71 (N.D. Ga. 2008).

## SCHEDULE "A"
## DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME

| Defendant Number | Defendant / Domain Name |
|---|---|
| 1 | abercrombieandfitchsale.us |
| 1 | abercrombie-and-fitch.us |
| 1 | abercrombieoutlet.us |
| 2 | abercrombieandfitchoutlet.name |
| 2 | abercrombiekidsoutlet.name |
| 2 | hollister-clothing.org |
| 2 | hollistercoclothing.com |
| 2 | hollisteroutletclothing.com |
| 3 | abercrombieandfitchoutlet.net |
| 4 | abercrombie-andfitchs.com |
| 4 | abercrombiefitchs.cc |
| 4 | hollisterclothingstore.org |
| 5 | abercrombiefitchfrance.com |
| 6 | abercrombiegoteborg.com |
| 6 | horlogebox.com |
| 6 | mizzoulambdas.com |
| 6 | zapateriamadrid.com |
| 6 | fitchtshirt.com |
| 7 | abercrombiemilano.com |
| 8 | abercrombienorgeno.org |
| 9 | abercrombiesireland.com |
| 9 | hollistersclearance.com |
| 9 | abercrombiesnorge.com |
| 9 | abercrombiesoutletmadrid.es |
| 9 | dennisklein.eu |
| 9 | hollisterirelandclothing.com |
| 9 | hollisterirelandclothing.net |
| 9 | hollistersirelands.com |
| 9 | hollisteroutletmadrid.net |
| 9 | ropahollisteronline.net |
| 9 | japanabercrombies.com |
| 9 | obrazkynamobil.eu |
| 10 | abershortsoutlet.us |
| 11 | abwa-vivon.org |
| 12 | afdundrum.com |
| 12 | flytecnam.com |

13

| | |
|---|---|
| 13 | afonsale.com |
| 13 | poloaf.com |
| 14 | afukstore.co |
| 15 | akosuabyreginak.com |
| 15 | nisayna.com |
| 16 | artemvoronov.com |
| 16 | hollistervdublin.com |
| 17 | bakkerijdickjansen.nl |
| 18 | barfwear.org |
| 18 | urimanage.org |
| 18 | delmaryachtclub.org |
| 18 | shanesnow.org |
| 19 | bearfeeding.com |
| 19 | labsforkids.org |
| 19 | safecom-inc.org |
| 19 | vetementfrancevente.com |
| 20 | billionairemice.com |
| 21 | blush-dance.co.uk |
| 21 | danmarkabercrombieandfitch.net |
| 21 | dengielocal.co.uk |
| 21 | ropahollistermadrid.net |
| 22 | bombommousse.com |
| 22 | cheaphollistersclothings.com |
| 22 | hollister-india.com |
| 22 | ceecgreen.com |
| 22 | hollisters-online.net |
| 23 | borderlinedagboek.nl |
| 24 | boutique4luxury.net |
| 24 | ibrandshops.net |
| 24 | replica4luxury.com |
| 25 | buistore.se |
| 25 | diybrands8.com |
| 25 | diybrand.ru |
| 25 | topfans666.co |
| 25 | topfashionfans.com |
| 25 | myshoppingfans666.com |
| 26 | cheapbags.cn |
| 27 | cheap-store2016.com |
| 28 | cndiybiz.com |
| 29 | concertartshow.com |

| | |
|---|---|
| 30 | duduok.com |
| 31 | fitnesskeuken.nl |
| 32 | focushopping.es |
| 32 | focushopping8.com |
| 33 | fr-abercrombie.com |
| 34 | hco-store.net |
| 35 | hollistercanada.com |
| 35 | hollister-clothingstore.net |
| 35 | hollistershirts.me.uk |
| 35 | hollisterclothing.net |
| 36 | hollisterclothing.org |
| 36 | hollisterclothingstore.com.co |
| 37 | hollisterdeutsch.eu |
| 38 | hollisterdeutschland.com |
| 39 | hollisterdundrums.com |
| 39 | virtualp.us |
| 40 | hollisterklass.com |
| 41 | hollisteronline.co.uk |
| 42 | hollisterpolosoutlet.com |
| 43 | imperialguardgaming.com |
| 44 | intraduziveis.org |
| 45 | joryclothes.com |
| 46 | kazazz.com.au |
| 47 | kledinghollister.nl |
| 48 | leefpark.nl |
| 49 | michelbodifee.nl |
| 50 | oneclothes.com |
| 51 | onlinepoloshirts.co.uk |
| 52 | optonovis.com |
| 53 | plymouthholidays.co.uk |
| 54 | positivi.be |
| 55 | remixemlak.com |
| 56 | scoolyishop.com |
| 57 | shakti-project.org |
| 58 | soldes-abercrombie.com |
| 59 | stylishsale.co |
| 60 | weisseditions.com |
| 61 | yiminer.com |